WILLARD DRURY & others *vs.* INHABITANTS OF NATICK & another.

A testatrix by her will gave all her real and personal estate, after payment of debts and funeral expenses, to a town, for the purpose of establishing, for the use and benefit of all the inhabitants of the town, a free public library, and, if the funds should prove sufficient, a free public reading-room, to be under the control of trustees to be chosen by the inhabitants from time to time, which trustees were directed to sell certain of the real estate and empowered in their own names to convey the same, and were also directed to convert the personal estate into money and pay her debts and funeral expenses, and to appropriate the residue to the purposes above named by erecting a building, buying books and setting apart a fund for the future purchase of books and the establishment of a reading-room; and she provided that the town should forever pay all the incidental expenses of managing and insuring the library and building. The town at first voted to accept these provisions, and chose trustees accordingly; but afterwards reconsidered this vote, and voted to decline to accept the same. *Held,*

(1.) That the will gave the estate to the town in fee.

(2.) That it was the duty of an administrator with the will annexed to collect the personal assets and pay the debts and funeral expenses of the testatrix, and that the direction to the trustees to do these things was inoperative and void.

(3.) That the trustees were vested with a power, coupled with a trust, which entitled them to seek the instructions of this court as to the proper discharge of their duty.

(4.) That under Gen. Sts. *c.* 100, trustees for charitable trusts need not give bonds.

(5.) That the trusts created by this will were charitable trusts, although a burden was annexed to the acceptance thereof by the town.

(6.) That the town had power to accept the same; and after doing so cannot renounce the same.

7.) That the town, by accepting these provisions, could not bind itself to expend more money than is allowed by Gen. Sts. *c.* 33, § 9, for that purpose.

8.) That the charitable trusts will not be defeated nor the estate forfeited by a failure on the part of the town to pay the expenses put upon them by the will.

BILL IN EQUITY by trustees chosen by the town of Natick under the provisions of the will of Mary Ann Morse, seeking instructions as to their duty. The material portions of the will were as follows:

" I, Mary A. Morse, of Natick, in the county of Middlesex and Commonwealth of Massachusetts, single woman, . . . . . naving a strong and abiding interest in the welfare and prosperity of my beloved native town, and being strongly desirous of promoting the same, do make, publish and declare this my last will and testament:

" First. I give and bequeath all real and personal estate, after

payment of all my just debts and my funeral expenses, to the
inhabitants of said town of Natick, for the purpose of founding
and establishing a literary institute for the use and benefit of all
the inhabitants of said town, under and according to the pro-
visions and regulations hereinafter contained.

" Second.   Said institute shall be named and called the Morse
Institute, and its object and purpose shall be to promote and dis-
seminate learning and intelligence among the inhabitants of said
town by the means of a library, to be composed of the best
standard works in the various departments of science and liter-
ature ; and also by means of a reading-room, if the funds hereby
created shall be found sufficient, and the trustees hereinafter
named shall deem it advisable to establish the same.

" Third.   A board of trustees, to consist of five persons, citi-
zens of said town, and men of probity and learning, shall be
chosen by the inhabitants of said town at the first annual town-
meeting next after my decease, and at the annual meetings
every fifth year thereafter, who shall hold office for the term of
five years ; and, in case a vacancy shall happen in said board by
reason of the death of any of its members, or of their removal
from said town, it shall be filled by election at the annual meet-
ing next thereafter, and until said vacancy is filled the remaining
members shall have and exercise all the powers of the full board.
Said trustees are hereby fully empowered to sell and in their
own names to convey all my real estate hereinafter directed to
be sold, and they shall have exclusive control of the establishing
and governing said institute as hereinafter provided.   And until
choice of said trustees as herein provided, the selectmen of said
town for the time being shall have charge and custody of the
estate hereby bequeathed, and shall take all measures necessary
for the safe keeping and protection thereof.

" Fourth.   Said trustees are directed, as soon after my decease
as may be deemed expedient, to sell all my real estate excepting
a lot of suitable dimensions for the location of the building here-
.nafter directed to be built for said institute, at the corner of
Central and Washington Streets, being the spot on which my
brick dwelling-house now stands, which shall be forever kept as

a site for said institute; and also to convert all my personal estate, as soon as may be deemed expedient after my decease, into money, and thereout of to pay all my just debts and funeral expenses.  Of the sum then remaining, the said trustees shall appropriate two thirds to the erection of said building, and the remaining third, with the exception of the sum of two thousand dollars, shall be appropriated by said trustees to purchasing books for said library.  The sum of two thousand dollars before reserved shall be invested by said trustees, upon undoubted securities, as a permanent fund, and the interest arising therefrom shall be appropriated by said trustees from time to time for purchasing new and valuable books for said library, or a part thereof may be used, if said trustees shall deem it expedient so to do, for establishing a reading-room.

" Fifth.  Said trustees, as soon as practicable, shall cause to be erected, on the site hereinbefore designated, a building for the use and purposes of said institute.  [Here followed a description of the building.]  Said trustees shall also purchase books for the library, having care always to select the best and most valuable works, as hereinbefore mentioned; they shall also appoint and remove the librarians, and make proper rules and regulations for the keeping and use of the library, making always sufficient provisions for the proper use and safe return of all books taken therefrom.  And they may, if they shall deem it expedient so to do, appropriate a part of the interest of said sum of two thousand dollars for establishing a reading-room in said institute building, and make all needful rules and orders for the use of the same.  They shall make quarterly examinations of the library, and also make annual reports to the town, of the condition of said institute and their doings in relation thereto.

" Sixth.  Said library and reading-room shall be forever free for the use of all the inhabitants of said town, subject to such rules and regulations as said trustees may from time to time establish.

" Seventh.  Said town of Natick shall forever pay all the expenses of the care of said library and reading-room, including the librarian's salary, and shall keep said building and grounds

in good repair and order, and shall also keep said building and library insured against loss or damage by fire; and in case they shall be destroyed or damaged by fire, the money accruing from said insurance shall be appropriated for rebuilding, repairing and reëstablishing the same."

It appeared from the bill and answer that the will was admitted to probate in August 1862, and on the 6th of April 1863 the town of Natick voted to receive and accept the said bequest, and chose the plaintiffs as the five trustees to take care of the same, who accepted the trust; and on the 4th of April 1864 the town reconsidered said vote, and voted to decline to receive said bequest, and chose a committee of three to relinquish and release all their right, title and interest therein. The answer of the defendants averred, amongst other things, that the estate of the testatrix proved so small that it would not be beneficial to the town to accept the same, with the burdens imposed by the will. The defendants were the inhabitants of Natick and the heir at law of the testatrix.

The case was reserved by *Gray,* J., upon the bill and answer for the determination of the whole court.

*J. G. Abbott & J. W. Bacon,* ( *G. B. Perry* with them,) for the plaintiffs. The will creates a gift to charitable uses. [The counsel cited some of the cases cited in the opinion.] The nature of the gift is not altered, even if it was upon a condition subsequent. The will does not create a trust in the town in its corporate capacity, but in the trustees. *Barrus* v. *Kirkland,* 8 Gray, 512. The *cestuis que trust* are the inhabitants, and not the town itself. *Green* v. *Putnam,* 8 Cush. 21. This court will regulate this charity. *Tainter* v. *Clark,* 5 Allen, 66, and cases there cited. The power of the town over the gift is carefully limited. The trustees have exclusive control of its management. By the vote of the town accepting the gift, the estate vested in the trustees as a trust, irrevocable by any vote of the town; and the town must perform the condition. 2 Story on Eq. § 1175, and cases there cited. *Harvard College* v. *Society for Theological Education,* 3 Gray, 280, and cases there cited. *Attorney General* v *Catherine Hall,* Jacob, 392 *Man* v. *Ballet,* Ib. 43. *Attorney*

*General* v. *Gleg*, 1 Atk. 356. The town has authority to receive, hold and manage the gift. Gen. Sts. *c.* 18, § 9 ; *c.* 33, §§ 8, 9. *Nourse* v. *Merriam*, 8 Cush. 11, 19. *Cushing* v *Newburyport*, 10 Met. 508. The condition, if impossible of performance or repugnant to the grant, is void. The gift being to a charitable use, no perversion of the trust, or resignation, or refusal to act or removal of the trustees, will give any rights to the heir at law ; but this court will see that the fund is properly applied. *Bliss* v. *Amer. Bible Soc.* 2 Allen, 334. *Winslow* v. *Cummings*, 3 Cush. 358. *Sanderson* v. *White*, 18 Pick. 339. Whether the fee passed to the trustees or not, they may apply to the court for instructions. *Howland* v. *Howland*, 11 Gray, 469. *Treadwell* v. *Cordis*, 5 Gray, 348. *Hooper* v. *Hooper*, 9 Cush. 126.

*H. W. Paine & T. H. Sweetser*, for the defendants. The estate vested in the town, under the will. It was at no time in abeyance, but vested immediately. The direction for the choice of trustees, and the powers given to them, did not divest the town of the estate. There is another reason why the estate did not vest in the trustees ; and that is, that they were not exempt from giving bonds. Gen. Sts. *c.* 100, §§ 1, 4. *Newcomb* v. *Williams*, 9 Met. 535. The trustees, therefore, have no right to apply to the court for instructions. They have no vested interest in the gift. Nobody else desires to litigate. The two defending parties are in accord. The reconsideration by the town of the vote to accept the gift and the vote to decline it were equivalent to an original refusal to accept it. There had been no intervening action affecting the rights of anybody. *Hunneman* v. *Grafton*, 10 Met. 457. *Withington* v. *Harvard*, 8 Cush. 66. It is well settled that towns may reconsider any vote they have passed, if the rights of third persons are not affected. Here the town accepted a gift coupled with a burden. Will this court compel the town to go on and maintain this literary institute, and to administer a trust which it has never commenced to administer? The testatrix did not intend to have the town accept the gift, unless it also assumed the burden ; and the town must be the sole judge of the propriety of assuming the burden. The court will not put this expense upon her estate. And as the town will

not assume the burden, the intent of the testatrix cannot be substantially carried out. If this is a charity, it is true that the court may find somebody to execute it if the town will not. But is this a charity? Its purpose is charitable. But can that be a charity which is coupled with an expensive duty? Suppose that money is given to found a hospital, which the donee is to maintain. And see *Sanderson* v. *White,* 18 Pick. 333.

GRAY, J. 1. The will of Miss Morse, though somewhat confused in language, and containing some inconsistent provisions, sufficiently manifests her intention to give her whole estate, real and personal, after payment of debts and funeral expenses, to the town of Natick in fee. This appears by the express words of the original gift " to the inhabitants of said town of Natick," as.well as by the directions that, until the choice of trustees as provided in the will, the selectmen of the town shall have the charge and custody of the estate, and that the town shall pay the expenses of the library and reading-room, when established, and keep the building and grounds in repair, and the building and library insured. Any other construction would leave the fee of the real estate, until the election of the trustees, in the heirs at law, in direct contradiction of the first words of gift; and would require a transfer of the title to the trustees, when appointed, in the absence of any express words to that effect, or of any necessity for such an inference, to enable the trustees to perform all the duties imposed upon them by the will.

2. Upon the probate of the will (in which no executor was named) and the appointment of an administrator with the will annexed, the personal property vested in him by relation from the death of the testatrix, and it became his duty to collect the assets and pay therewith her funeral expenses and debts. The clause in the will, which directs the trustees to convert the personal estate into money as soon as might be deemed convenient, and out of the proceeds to pay debts and funeral expenses, was inconsistent with the duty imposed by law upon the administrator, and was therefore inoperative and void.

3. The duties of the trustees under the will are to establish and govern the institute; to sell and convey all the real estate

not needed for its site ; to apply part of the property to the erection of a building, and the residue to the purchase of books and the creation of a permanent fund for keeping up a library, and, at their discretion, establishing a reading-room ; to purchase books, appoint and remove librarians, regulate the use of the library, examine it quarterly, and make annual reports to the town. Some of the powers of general superintendence and control, thus conferred, would seem to make the trustees visitors of the charity, although not so called in the will; for the question whether they are visitors depends on the nature of the powers delegated to them by the founder of the charity, rather than on the name by which they are called in the instrument of foundation; and no technical or precise form of words is necessary for the appointment of either general or special visitors. *Sanderson* v. *White*, 18 Pick. 338. *District Attorney* v. *Cushing*, 2 Cush. 530, 531. *Allen* v. *McKeen*, 1 Sumner, 301. Tudor on Charitable Trusts, (2d ed.) 119–121, and cases cited. But it is unnecessary in this case to consider whether the testatrix has made the trustees visitors, general or special. It is clear that the power to sell and convey real estate, and to apply the proceeds of this, and the personal estate remaining after payment of the debts and funeral expenses, to the erection of a building and establishment of a library, and, if the trustees should see fit, a reading-room, is not a mere naked power, but a power coupled with a trust. *Greenough* v. *Welles*, 10 Cush. 576, 578. *Leeds* v. *Wakefield*, 10 Gray, 517, 518.

4. This court has jurisdiction in equity of all suits and proceedings for enforcing and regulating the execution of trusts, whether relating to real or to personal estate. Gen. Sts. *c.* 113, § 2. This jurisdiction has been repeatedly exercised in suits brought for the instructions of the court by trustees having the legal title. *Treadwell* v. *Cordis*, 5 Gray, 348. But it is not limited to such cases. The fact that the plaintiffs have not the legal estate does not make them the less trustees, or simplify the questions arising in the performance of their trust, or oblige them to assume the risk of deciding those questions for themselves.

5. The provisions of the Rev. Sts. *c.* 69, requiring trustees under a will to give bond to the judge of probate before entering on the duties of their trust, were held by this court to be confined to private trusts of limited duration, and not to extend to a public and permanent charity, the beneficiaries of which were indefinite, and a perpetual succession of trustees provided for in the will establishing it. *Lowell, appellant,* 22 Pick. 215. In the recent revision of that chapter, the words " for minors or others," in the first section, are omitted. Gen. Sts. *c.* 100, § 1. But in view of the other provisions of the chapter, which have been retained, and especially those of the same section, requiring a trustee to give bond to pay and deliver the estate in his hands at the expiration of his trust " to the person or persons entitled thereto," of the second section, exempting him from giving bond upon the consent of " all persons interested in the trust fund," and of the twelfth section, authorizing his bond to be put in suit " for the use and benefit of any person interested in the trust estate ; " and upon referring to the former statutes, as was done in the case just cited, to aid the interpretation ; we are of opinion that the legislature did not intend to alter the law in this respect and no such change was advised or suggested in the report of the commissioners. All the duties to be performed by the trustees under the will of Miss Morse relate to the establishment and management of the library and reading-room for the use of the inhabitants of the town. If this was a public charity, the trustees were not required to give bond.

6. A doubt was expressed by one of the learned counsel for the defendants whether this was a public charity. But the court can see no foundation for any doubt upon this subject.

The testatrix in the preamble of her will gives, as a reason for her gift, " having a strong and abiding interest in the welfare and prosperity of my beloved native town, and being strongly desirous of promoting the same." She then gives her estate to the town of Natick, " for the purpose of founding and establishing a literary institute, for the use and benefit of all the inhabitants of said town," with the " object and purpose to promote and disseminate learning and intelligence among the inhabitants

of said town, by the means of a library, to be composed of the best standard works in the various departments of science and literature; and also by means of a reading-room, if the funds hereby created shall be found sufficient, and the trustees hereinafter named shall deem it advisable to establish the same;" and provides that "said library and reading-room shall be forever free for the use of all the inhabitants of said town, subject to such rules and regulations as said trustees may from time to time establish."

The *St.* of 43 Eliz. *c.* 4, in principle and substance, so far as it recognizes, defines or indicates what are charitable uses, is part of our common law. *Going* v. *Emery*, 16 Pick. 116. *Burbank* v. *Whitney*, 24 Pick. 152. *Earle* v. *Wood*, 8 Cush. 445. The objects named in that statute are contained in the preamble which recites that many gifts have been made, as well by the crown as by private persons, "some for relief of aged, impotent and poor people, some for maintenance of sick and maimed soldiers and mariners, schools of learning, free schools and scholars of universities, some for repair of bridges, ports, havens, causeways, churches, sea-banks and highways, some for education and preferment of orphans, some for or towards relief, stock or maintenance for houses of correction, some for marriages of poor maids, some for supportation, aid and help of young tradesmen, handicraftsmen and persons decayed, and others for relief or redemption of prisoners or captives, and for aid or ease of any poor inhabitants concerning payment of fifteens, setting out of soldiers and other taxes." No one can read this sentence without perceiving its aim to have been to show by familiar examples what classes or kinds of uses were considered charitable, or so beneficial to the public as to be entitled to the same protection as strictly charitable uses, rather than to enumerate or specify all the purposes which would fall within the scope and intent of the statute, much less every possible mode of carrying them out. It is accordingly the well settled construction of this ancient act, both in England and America, that in determining what uses are charitable within the statute, courts are to be guided not by its letter, but by its manifest spirit and reason,

and are to consider not what uses are within its words, **but what** are embraced in its meaning and purpose. There are no better illustrations of this than in the cases of gifts to towns and cities or for the promotion of education and useful knowledge.

The only public buildings or works named in the *St.* of 43 Eliz. are bridges, ports, havens, causeways, churches, sea-banks and houses of correction. Yet there are high authorities, English and American, in favor of holding any gift for the benefit of all the inhabitants of a town to be charitable. Lord Keeper Coventry, in declaring the charitable uses to which an estate held by the town of Warwick should be applied, included not only the repair of a church, binding out poor children as apprentices, relief of the poor, and repair of a bridge, but " such other religious, good and charitable uses tending to the general good of the town, and ease of the inhabitants thereof, as the bailiff and burgesses for the time being should think meet and convenient; " and in another case established, against the heirs at law, a devise of real estate to " be employed to and for such good uses of perpetuity within the city of Bristol " as by the mayor and aldermen of that city, with the consent of the donor's executors, should be thought fit and necessary. *Attorney General* **v.** *Burgesses of Warwick*, West Ch. 61; *S. C.* Dwight's Charity Cases, 142. *Mayor & Burgesses of Bristol* v. *Whitson*, Ib. 171; *S. C.* Duke, (Bridgman's ed.) 377. Lord Camden defined a charity as " a gift to a general public use, which extends to the poor as well as the rich; " and held a devise to bring water into a town for the use of the inhabitants forever, and make conduits and reservoirs, to be charitable. *Jones* v. *Williams*, Ambl. 651. This definition has been adopted by Chancellor Kent, and by the supreme court of the United States; and Chancellor Kent accordingly held a legacy to build a town-house for transacting town business to be a charitable bequest. *Coggeshall* v. *Pelton*, 7 Johns. Ch. 292. *Perin* v. *Carey*, 24 How. 506. Gifts for the improvement of a city have been repeatedly held to be charitable. *Howse* v. *Chapman*, 4 Ves. 542. *Gort* v *Attorney General*, 6 Dow, 136. *Attorney General* v. *Heelis*, 2 Sim. & Stu. 76, 77. *Mitford* v. *Reynolds*, 1 Phillips R. 191, 192

*Attorney General* v. *Eastlake*, 11 Hare, 205. *Mayor, &c. of Faversham* v. *Ryder*, 18 Beav. 318 ; *S.· C.* 5 De Gex, Macn. & Gord. 350. *American Academy* v. *Harvard College*, 12 Gray, 551. *Cresson's appeal*, 30 Penn. State R. 437.

Of the words " ports and havens," Sir Francis Moore, who penned the statute, whose exposition of it has rarely, if ever, been found too broad, and whose reading upon it was cited by Lord Eldon as of itself sufficient authority upon another point arising under this clause, says, " Common ponds, or watering places, are within the equity of these words." Duke, (Bridgman's ed.) 129. *Attorney General* v. *Brown*, 1 Swanst. 297, 307, 308 ; *S. C.* 1 Wils. Ch. 365, 386. It is perhaps worthy of notice in this connection that in another aspect the law of Massachusetts ·from the earliest times has regarded the rights of the public in great ponds as similar to their rights in the sea. Body of Liberties of 1641, art. 16. Anc. Chart. 148, 149. *Commonwealth* v. *Alger*, 7 Cush. 68. *West Roxbury* v. *Stoddard*, 7 Allen, 158.

The only modes of education, enumerated in the statute, are " schools of learning, free schools, and scholars in universities." But gifts for the promotion of science, learning and useful knowledge, by other means than schools or colleges, or direct instruction of pupils or students, are equally public and charitable. Such are held in the English courts of chancery to be gifts to establish a perpetual botanic garden, for the public benefit; *Townley* v. *Bedwell*, 6 Ves. 194 ; or a museum for the collection and preservation of objects of science and art, for the public improvement; *British Museum* v. *White*, 2 Sim. & Stu. 594 ; or an institution for the study and cure of diseases of animals useful o man, and maintaining free lectures thereon. *London University* v. *Yarrow*, 23 Beav. 159 ; *S. C.* 1 De Gex & Jones, 72. The Smithsonian Institution at Washington owes its existence to a bequest to found " an establishment for the increase and diffusion of knowledge among men," which Lord Langdale held to be a valid charity. *President of United States* v. *Drummond*, cited in 7 H. L. Cas. 155. U. S. Sts. 1836, *c.* 252 ; 1846, *c.* 178. And " the benefit and advancement and propagation of

education and learning in every part of the world, as far as circumstances will permit," has been recently held by the highest judicial authorities in England to be a good charitable use. *Whicker* v. *Hume*, 14 Beav. 509; *S. C.* 1 De Gex, Macn. & Gord. 506; 7 H. L. Cas. 124. But the gift must be expressly or by necessary implication for the public benefit. Therefore a private museum, or a library established by private subscription for the use of the subscribers, has been held not to be a charity. *Thomson* v. *Shakespeare*, H. R. V. Johns. 616; *S. C.* 1 De Gex, Fisher & Jones, 406, 408. *Carne* v. *Long*, 2 De Gex, Fisher & Jones, 79.

The general court of the Colony did not suffer the law of Massachusetts to rest merely on the law of England, but in 1671 passed a statute, by which they enacted that all gifts and legacies " to the college, schools of learning, or any other public use," should be disposed of " according to the true and declared intention of the donors," and authorized the county courts to appoint trustees and to compel them to render accounts of their disposal and management thereof. 4 Mass. Col. Rec. pt. ii. 488. The general court at that time sometimes exercised a kind of chancery power; and their attention had been called to the subject of charitable uses in a case decided by them the year previous, in which they recognized a free school established in Roxbury by voluntary contribution of the inhabitants " out of a religious care of their posterity and their education in good literature " as " a good and pious " and " charitable work," ratified the agreement under which it had been established, and made the feoffees " responsible to the court of assistants and the donors for the faithful discharge of their trust." Ib. 457, 458. Jurisdiction over charities was exercised under the Colonial Statute of 1671 by the county courts, and, after the repeal of the Colony Charter in 1685, by the president or governor and council. *Hadley* v. *Hopkins Academy*, 14 Pick. 246, 263–265. Washburn's Judicial Hist. Mass. 28, 34, 98. Mass. Col. St. 1685, 5 Mass. Col. Rec. 477. Under the Province Charter, the king disallowed all acts continuing in force the colonial laws, or establishing courts of chancery; the general court seem to

have acted in the matter of charities by resolves or acts of incorporation only, and jurisdiction in equity over trusts was first conferred on this court by *St.* 1817, *c.* 87 ; but the want of chancery jurisdiction did not affect the validity of charitable bequests when sufficient in form. *Bartlet* v. *King*, 12 Mass. 544, 545. 4 Dane Ab. 243. 9 Gray, 518. Quincy, 538, *n.* and authorities cited. *Vidal* v. *Girard*, 2 How. 196.

The Constitution of the Commonwealth declares that " the encouragement of arts and sciences and all good literature tends to the honor of God, the advantage of the Christian religion, and the great benefit of this and the other United States of America," and that wisdom and knowledge, as well as virtue, diffused generally among the body of the people, are necessary for the preservation of their rights and liberties ; and therefore makes it the duty of all legislatures and magistrates to cherish the interests of literature and the sciences, and encourage private societies and public institutions for their promotion. Const. of Mass. *c.* 5, § 1, art. 1 ; § 2.

Charities for the promotion of education and learning have not been confined in this commonwealth within the words of the statute of Elizabeth. Chief Justice Shaw, in the case of *Count Rumford's Legacy*, said, " That a gift designed to promote the public good, by the encouragement of learning, science and the useful arts, without any particular reference to the poor, is regarded as a charity, is settled by a series of judicial decisions, and regarded as the settled practice of a court of equity ; " and held that a gift in trust to pay the income in rewards for discoveries and improvements on light and heat, most useful to mankind, was charitable. *American Academy* v. *Harvard College*, 12 Gray, 551. In the case of the *Lowell Institute*, a bequest to provide for the delivery of public lectures in the city of Boston, upon philosophy, natural history and the arts and sciences, for the promotion of the moral, intellectual and physical instruction and education of the inhabitants of the city, was held to be a charity. *Lowell, appellant*, 22 Pick. 215. And in *Northampton* v. *Smith*, 11 Met. 390, the court recognized the validity of a bequest, payable at a future day, to a town, to establish model and

experimental farms to promote the knowledge of the art and science of agriculture. The apparently inconsistent statement of Chief Justice Shaw in *Sanderson* v. *White*, 18 Pick. 333, that since the passage of the *St.* of 43 Eliz. "all gifts are to be deemed charitable which are enumerated in that statute as such, and none other," is shown by referring to the case of *Morice* v. *Bishop of Durham*, which he cites in its support, to have omitted, either by accident, or as immaterial to the case then under consideration, the words added by Sir William Grant, and in substance repeated by Lord Eldon, in that case, "or which by analogies are deemed within its spirit and intendment." 9 Ves. 405. 10 Ves. 541. See also *Sohier* v. *St. Paul's Church*, 12 Met. 250; *Earle* v. *Wood*, 8 Cush. 445, and cases cited.

This gift to the town of Natick to establish a library for the use of all the inhabitants was therefore clearly a public charity.

7. The capacity of a city or town to take and hold devises and bequests for appropriate charitable uses is perfectly well settled. *Vidal* v. *Girard*, 2 How. 190. *Perin* v. *Carey*, 24 How. 505. *White* v. *South Parish in Braintree*, 13 Met. 506. *Nourse* v. *Merriam*, 8 Cush. 19. *Webb* v. *Neal*, 5 Allen, 575. Indeed, the statutes of the Commonwealth in terms authorize towns to hold real and personal estate "for the public use of the inhabitants," or "in trust for the support of schools and for the promotion of education within the limits of the town;" and "to receive, hold and manage any devise, bequest or donation, for the establishment, increase or maintenance, of a public library within the same." Gen. Sts. *c.* 18, § 9; *c.* 33, § 9.

8. The devise and bequest to the town of Natick vested in the town from the death of the testatrix, subject to be renounced by the town within a reasonable time and before manifesting an intention to accept it. *Townson* v. *Tickell*, 3 B. & Ald. 31. *Doe* v. *Smyth*, 9 D. & R. 136; *S. C.* 6 B. & C. 112. *Ex parte Fuller*, 2 Story R. 330. The town in April 1863, at a meeting duly called for the purpose, voted to accept and receive this gift, and chose trustees to take charge of it according to the will. Upon such acceptance, the power to renounce the gif'

ceased, and the estate could not pass from the town without a conveyance in due form of law.

Besides; the gift being for a charitable purpose, and once accepted, could not afterwards be renounced or conveyed away, so as to defeat the charity. *American Academy* v. *Harvard College*, 12 Gray, 551. *Harvard College* v. *Society for Theological Education*, 3 Gray, 280. *Attorney General* v. *Christ's Hospital*, 1 Russ. & Myl. 626; *S. C.* Tamlyn, 393. *Attorney General* v. *Caius College*, 2 Keen, 163.

9. The town could not by such acceptance bind itself to appropriate money to the support of the charity beyond the limit prescribed by the statute, which provides that towns may " appropriate money annually for the maintenance or increase of a public library a sum not exceeding fifty cents for each of its ratable polls in the year next preceding that in which such appropriation is made." Gen. Sts. *c.* 33, § 9. It is unnecessary, for the decision of this case, to consider whether the town can, by accepting a charitable gift for such a purpose, bind itself in advance to appropriate money to its support, or whether the sum to be so voted must be determined by annual vote of the inhabitants from time to time. It is not to be presumed that the town will fail to carry out, to the extent of its legal powers, the wishes of its benefactress.

10. The provision in the will for the payment by the town forever of all expenses of this charity and of repairing and insuring the building and library, even if subject to the vote of the town from time to time, does not invalidate the gift, nor forfeit the estate upon non-compliance with this provision, nor enable the town to renounce the gift at pleasure, after having once accepted it. This provision is not in the form of a condition, but of a direction. If it were in the strictest form of a condition, then so far as it undertook to impose obligations upon the town for the future, which it could not by law assume, it would be repugnant to the grant and void. *Nourse* v. *Merriam*, 8 Cush. 11. *Attorney General* v. *Greenhill*, 33 Beav. 193. 2 Bl. Com. 156.

We have thus disposed of all the questions concerning which

instructions have been asked by the plaintiffs. **A final decree** may be entered for the establishment of the charity, with liberty reserved to the trustees to apply to the court hereafter for further directions.                                   *Decree accordingly.*