WEBSTER CITY, in the State of Iowa, as Trustee under the last Will and Testament of KENDALL YOUNG, Deceased, and F. D. YOUNG, SAMUEL BAXTER, E. D. BURGESS, J. W. YOUNG and W. J. COVIL, as Trustees of the Kendall Young Library and Trust Estate, Appellees, v. WRIGHT COUNTY, IOWA, W. H. TROWBRIDGE, as Treasurer of Wright County, E. M. CALLENDER, as County Auditor of Wright County, the Board of Supervisors of Wright County, Iowa, Appellants.

**Taxation:** PUBLIC LIBRARIES: EXEMPTION OF THEIR LANDS FROM TAXATION. A public library is an educational institution within the contemplation of Code, section 1304, as amended by the 32nd General Assembly, and lands constituting its endowment fund and devoted exclusively to its maintenance, though situated in a county other than that in which the library is located, are by the terms of the law exempt from taxation.

*Appeal from Wright District Court.*—HON. W. D. Evans, Judge.

THURSDAY, NOVEMBER 18, 1909.

SUIT in equity to enjoin the collection of a tax upon certain real estate in Wright County, Iowa, upon the ground that the property against which it was levied and assessed was exempt from taxation in the year 1907. The petition also asked that the tax be adjudged illegal and

void, and that the county treasurer be directed to cancel the same. The defendants demurred to the petition as amended, and, the said demurrer being overruled, defendants elected to stand thereon, and a decree was entered as prayed. Defendants appeal.—*Affirmed.*

*Bradford Knapp,* County Attorney, for appellants.

*W. J. Covil,* for appellees.

DEEMER, J.—Kendall Young, now deceased, a resident of Hamilton County, died testate on June 30, 1896, seised of the lands now in controversy, containing about six hundred and forty acres. By his last will and testament he devised and bequeathed his entire estate, subject to the support of his widow during life, to the city of Webster City, Iowa, in trust for the establishment and maintenance of a free public library in said city, to be known as the "Kendall Young Library," on condition that the same be taken, held, managed and controlled by certain persons, naming them, and their successors in office. All of said property was so devised by the testator as to constitute an endowment fund for the maintenance of the said library, save as a designated sum was to be used for the erection of a building and the purchase of books therefor. Pursuant to this devise, a public library was duly constructed in Webster City, Iowa, books purchased, and the library thrown open to the public. The trustees named in the will are plaintiffs in this suit and trustees of the said library. The defendants, in addition to the county, are the treasurer, the county auditor, and the board of supervisors thereof. The will was duly admitted to probate and an executor appointed, and on the 19th day of December, 1903, the property was turned over by the executor to the trustees for the purpose of carrying into effect the trust created by the will. The library building and

equipment cost approximately $35,000, and it is now being administered by the trustees above named. It contains the usual reading rooms, books, stacks, lecture room, librarian's room, cataloguing room, and other apartments and furnishings necessary for institutions of like character. It now has between six thousand and seven thousand books, covering the subjects usually found in a first-class public library. It has a librarian, and is open to the public. The Wright County lands were and are now leased, and the rents and profits arising therefrom are used in support of the library. The total endowment of the institution is more than $125,000, and the annual income is something more than $4,000. The proper officials of Wright County assessed and valued the lands in controversy and levied taxes against the same as other like property in Wright County. This action was brought to cancel these taxes, and to enjoin the defendants from collecting the same. The sole question in the case is, are these lands exempt from taxation in virtue of section 1304 of the Code as amended by chapter 54, Acts 32d General Assembly. This section, as amended, reads as follows:

All grounds and buildings used for public libraries, including libraries owned and kept up by private individuals, associations or corporations for public use, and not for private profits, and for literary, scientific, charitable, benevolent, agricultural and religious institutions and societies, devoted solely to the appropriate objects of these institutions, not exceeding one hundred and sixty acres in extent, and not leased or otherwise used with a view to pecuniary profit, but all deeds or leases by which such property is held shall be filed for record before the property above described shall be omitted from assessment; the books, papers and apparatus belonging to the above institutions, used solely for the purposes above contemplated, and the like property of students in any such institution used for their education; money and credits belonging exclusively to such institutions, and devoted solely to sustaining them, but not to exceed in amount or income

the amount prescribed by their charters or articles of incorporation; *provided, however, that real estate owned by an educational institution of this state, as part of its endowment fund, shall not be taxed.*

The italicized part of this section as quoted is the amendment to the section, known as chapter 54, Acts 32d General Assembly, which went into effect July 4, 1907. The section as it originally read ended with the word "incorporation," just preceding the language italicized. This is deemed important in the construction of the proviso introduced by the subsequent legislative enactment. Appellants contend that, as taxation is the rule and exemption the exception, statutes providing for exemptions should be strictly construed, and no property relieved from its burden except such as clearly and fairly falls within the express terms of the statute. Pursuing this argument, they contend that a public library, such as the one above described, is not an educational institution within the meaning of the statute as amended. The trial court held that this library was an educational institution, and exempted the lands in controversy on the theory that they constituted an endowment fund for the library. This finding is challenged by appellants, and for them it is contended that the words "educational institution" have a distinct and certain meaning and are applicable only to schools, academies, colleges, and universities and the like—that is to say, a place where regular and systematic instruction is given by teachers and professors to a student body—that this is the popular understanding of the term, and that such must be presumed to have been the legislative thought and intent. They also say that as the library is in Webster City in Hamilton County, and the land in Wright County, they should not be exempt from taxation for the reason that the other taxpayers of Wright County receive no benefits whatever from the library, and that, as the county must police this land, keep up the roads which

pass through or near the same, and be out other administrative expenses, the land should not be exempt from sharing its part of this burden, and that the amendment to the law which introduced the exemption should be considered with this thought in mind. No other question is presented in argument, save the proper construction of the words "educational institution." It is practically conceded that these lands constitute a part of the endowment fund for the Kendall Young Library, and that, if exempt, the decree of the district court is correct.

The Legislature has given us some rules for the construction of statutory language, and, among other things, it is said: "Words and phrases shall be considered according to the context and the approved usage of the language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning." Paragraph 2, section 48, Code. With this rule for a guide, we are to look at the context and to the approved usage of the language in order to determine its proper construction, and may also consider the fact that the words may have acquired a peculiar or appropriate meaning in law. Section 1304, before its amendment, had reference to exemptions, and attempted in seven separate paragraphs to differentiate, and measurably, at least, classify, the different forms of exemption. In this classification public libraries and private libraries kept for public use, the grounds, the buildings used for literary, scientific, charitable, benevolent, agricultural and religious institutions are classified as so nearly akin as to be brought together for the purposes of exemptions. This in itself is an indication that libraries stand on the same footing as other literary and scientific institutions. The amendment introduced by the Thirty-second General Assembly should be construed with this thought in mind. Surely a public library is not a charitable, benevolent, agricultural or religious institution, but it cer-

tainly is educational in character, and should, as we think, be held to be of that type, so that, looking to the context, it seems reasonably certain that a public library is an educational institution.

Moreover, the words have acquired a peculiar and appropriate meaning in law. In *Inhabitants v. Brooks,* 164 Mass. 79 (41 N. E. 119) the Supreme Court of Massachusetts held that the term "educational institution," as used in a statute of that state exempting educational institutions from taxation on collateral legacies, included a free public library, and that legacies given to a town to establish and maintain a free public library were exempt. The legal status of a public library is pretty well defined by the decisions of the courts of this country. Indeed, it would seem that little doubt should be entertained regarding the educational character of such institutions. On no other theory can a tax levy in their support be sustained. The national bureau of education at Washington has always taken the position that public libraries are institutions of learning. In interpreting the will of John Crerar, the founder of the great public library in Chicago, Judge Tooley, at circuit, said in an opinion adopted by the Appellate Court as its own: · "Such a library, beyond dispute, is a great public blessing to all within its range, rich and poor alike. It will make all of them wiser and better and more useful and powerful for good in all the relations of life. It is pre-eminently an educational institution, because its benefits will extend to a larger body of people than can be reached by any college or other school of learning." *Crerar v. Williams,* 44 Ill. App. 497 (s. c. 145 Ill. 625). In this state a library is considered to be within the proper range of school apparatus, for the statute expressly authorizes the acquirement and use of books by a school township and rural independent districts, and the establishment of small libraries to aid in the dissemination of knowledge. See Acts 28th General Assembly, chapter 110.

Indeed, it is quite generally conceded that Carlisle was right when he said that the true university of today is a collection of books. Of course, it is not a school in the narrow sense of the word, but a tax for the organization and maintenance of public libraries, as a part of the educational system of the state, has been sustained without question. See *Marion v. Forest,* 168 Ind. 94 (78 N. E. 187). Somewhat similar provisions have also been sustained in other states. See *Public Library v. Beitzer,* 118 Ky. 738 (82 S. W. 421); *Donohugh's Appeal,* 86 Pa. 306. In the last-cited case Judge Mitchell in delivering the opinion of the court said: "The educational influence of great libraries has been recognized by all civilized people in all ages. They have been the refuge and preservers of knowledge in the darkest times of ignorance and superstition, the source and rallying point of awakened interest in philosophy and science, whenever the human mind has aroused itself to a new search for intellectual light, and the glory and pride of nations, in exact proportion as they have attained a higher plane of enlightened and prosperous civilization." See, also, in this same connection, *Maynard v. Woodard,* 36 Mich. 423. In *Drury v. Inhabitants,* 92 Mass. 169, it is held that gifts for the promotion of science, learning, and useful knowledge by means of libraries are a mode of education, although not perhaps a school of learning or a free school. From this it appears that the words "educational institution" have acquired such a meaning and construction in law as to include free public libraries, and that should be the interpretation placed upon these words as they appear in our statute. Appellants have cited no case to the contrary, nor have we been able to find any after a most careful search.

That it is for the use and benefit of the inhabitants of Webster City alone is not determinative of the question now before us. Moreover, we find no clause in the will limiting the use of the library to the inhabitants of the

city, but, even if that were true, we see no reason for not allowing the exemption. Restrictions are found in the law with reference to who may attend the public schools. These are well known, and need not be elaborated. We can not do better in closing this discussion than quote the following from an article by the librarian of the Brooklyn Public Library: "Educators are coming to realize that the library is not only a supplement to, but an adjunct of, the public school. . . . If the best results are to be obtained, it is essential that the public school and the public library—the two great factors in the educational work of the city—shall work in the utmost harmony. . . . We must not lose sight of the fact that the library is an educational institution. The public library is no longer a luxury. It plays an important part in the making of good citizens. It is as essential to the welfare of the nation as the public parks, public playgrounds, and public schools." The librarian of the Boston Public Library is also quoted as saying: "Under modern conditions a library, considered as a municipal institution, must be so administered as to reach, as no other educational institution can reach, all classes in the community. It invites us to meet there the best men and women of the world and learn of them." We feel justified in saying, then, that under all known rules of construction a public library is an educational institution, and that the trial court was right in allowing the exemption.

The decree therefore must be *affirmed*.

Evans, C. J., taking no part.