STATE *v.* FISK UNIVERSITY.

(*Nashville.* January 22, 1889.)

1. TAXATION. *Exemptions of property held and used for school purposes.*

Statutes exempting property from taxation when "held and used for purposes purely religious, charitable, scientific, literary, or educational" are less strictly construed than like statutes exempting property held and used for private gain or individual profit.

Constitution cited: Art. II., § 28.

Acts construed: Act 1883, Ch. 105; Code, § 601 (M. & V.).

Cases cited and approved: University v. Skidmore, *ante*, p. 155; Northwestern University v. People, 88 Ill., 333; Seminary v. People, 106 Ill., — (S. C., 46 Am. Rep., 702); Griswald College v. State, 46 Iowa, 275 (S. C., 26 Am. Rep., 138); Tax Commissioners v. People, 6 Hun. (N. Y.), 109; Academy v. Wilbraham, 99 Mass., 599; State v. Ross, 24 N. J. Law, 497; People v. Commissioners, 10 Hun., 246.

2. SAME.    *Same.*    *Case in judgment.*

Fisk University, a chartered institution of learning, purchased as its permanent site three separate blocks of land, located near Nashville, containing six or eight acres each, and separated by streets.    Upon the north and south blocks extensive college buildings were erected. The middle block was assessed for taxes in 1884.    Two small frame buildings located on it were then used for school purposes.    Barn and stables were also located on this block, and a crop of corn, hay, and vegetables were raised on part of it each year, and used at the University.    This block, like the other two, was purchased and held for use of the University, and it was contemplated that other college buildings would be placed upon it, when a fund sufficient for that purpose could be raised.    Part of such a fund had then been raised. The property had not been, prior to 1884, assessed for taxation.    The University was in actual operation, having two hundred and fifty to three hundred students.

*Held:* That said entire property was exempt from taxation under Act 1883, Ch. 105.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.    ANDREW ALLISON, Ch.

Attorney-General PICKLE and J. B. DANIEL for Complainants.

JOHN RUHM for Defendant.

FOLKES, J.    This is a bill filed by the State and county to collect taxes assessed for the year 1884 upon a lot containing six or eight acres. The cause was heard upon an agreed statement of

facts, and the bill dismissed by the Chancellor, and is now before us on appeal by complainants.

The statement of facts is as follows:

*First*—"The Fisk University is an educational institution, chartered under the laws of Tennessee. It is a college for colored people of both sexes. Connected with the college is a dormitory, where from two hundred and fifty to three hundred boarding pupils are entertained. But this dormitory is not located on the land sought to be taxed in this case. It is located in 'Jubilee Hall.'

"In purchasing its permanent site Fisk University secured three separate blocks of land, located in the thirteenth civil district of Davidson County, each square or block containing six or eight acres, and each separated from the others by streets only."

*Second*—"The Fisk University building known as 'Jubilee Hall' was, several years ago, erected on the north square, and in 1881 thereafter the building known as 'Livingstone Hall' was erected on the south square. The remaining or middle square remains vacant, except as hereinafter recited, and was so in 1884; and this is the square assessed for taxes for 1884, and for the collection of which this suit is brought." (The amount of the taxes claimed is then set out, but no question is made on the amount.)

*Third*—"It is contemplated by the officers of the University now in charge, at some time in the

State *v.* Fisk University.

future not yet determined, when funds are provided for that purpose—and such a fund is being raised, and a small portion has already been accumulated for that purpose—to erect another large building for college purposes, and to erect the same on this vacant lot; and this is the real purpose for which this land was purchased, and. has been and .is now held. Another purpose of owning this land is to keep any other parties from building on or occupying the same."

*Fourth*—"A part of this lot is leveled off, and some trees have been planted thereon. A portion of it is each year cultivated, and was for 1884, and a crop of corn and vegetables raised thereon. Hay is also grown yearly on this lot, and mowed and fed to the cows. Stables and barns are located on one corner of this lot, and were in 1884; also one small frame building used for school rooms for the students in the primary department; also another frame building for the intermediate department, built in 1887.

Pupils of the college are engaged in attending to the raising of corn, hay, and vegetables. Those so engaged receive pay for their work in board and tuition. The corn and hay raised is fed to the cows and horses belonging to and connected with the college. The vegetables are used in the college mess room, which mess room is situated in 'Jubilee Hall,' and is used for college purposes merely.

*Fifth*—"No taxes have ever been paid by the University on any of this property."

We have given the entire agreed case as made by the parties, although it is manifest that much of it may be said to be immaterial.

Counsel for complainants have assigned as error "that the property in question was not *used exclusively for educational purposes,*" but that "it was used for *farming and gardening purposes,*" and that under the State Constitution and the Act of 1883, in force at the time of the assessment now involved in this suit, all property must be taxed, save such as is "*used exclusively for purposes purely educational,*" and that to obtain benefit of the exemption claimed, it must be *actually so used.*

The language of the State Constitution of 1870, Article II., Section 28, upon this subject is as follows:

"All property, real, personal, and mixed, shall be taxed, but the Legislature may exempt such as may be held by the State, by counties, cities, or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational."

The Act under which the assessment in this case was made is to be found in Acts 1883, Chapter 105.

Section one provides for assessment of all property, "except such as is declared exempt in the next section."

Section two enacts "that the property herein enumerated shall be exempt from taxation, and none other."

Subsection two exempts "all property belonging to any religious, charitable, scientific, literary, or educational institution, and actually used for the purpose for which said institution was created."

The contention on behalf of the State and county is that, inasmuch as the Constitution of 1870 requires all property to be taxed, with the exceptions therein stated, the exception and exemption must be strictly construed, and nothing not within the letter of the exception must be allowed to escape its share of the burdens of government.

It is unnecessary to resort to argumentation or to cite authorities for the general principle that exemptions from taxation are generally to be construed with great strictness. Our reported cases state and maintain the rule as contended for, and this Court has no purpose or disposition to depart from such construction. But this, like all other rules of construction, is made to rest upon the intention of the Legislature, and will not be allowed to defeat the will of the law-making branch of the Government.

To apply this strict construction to individuals and to corporations for profit is but to announce the judgment of the Courts upon the intention of the Legislature, while to give to a constitutional or legislative Act granting an exemption in aid of institutions literary and educational, a construction

that is within the spirit, policy, and purpose of the Act, and not opposed to its letter, is likewise but ascertaining and declaring the intent of the law-making power.

It is not difficult to arrive at the intention of the Legislature with reference to the substantial benefits which the exemption in question is intended to confer upon such institutions. The Constitution of 1870, which authorizes the exemptions, in another section says:

"Knowledge, learning, and virtue, being essential to the preservation of republican institutions, and the diffusion of the opportunities and advantages of education throughout the different portions of the State being highly conducive to the promotion of this end, it shall be the duty of the General Assembly, in all future periods of this Government, to cherish literature and science."

And while it is true that this language is found in the section which treats of the common school fund, it is not confined to it, but is declaratory of the sense of the Constitutional Convention on the subject of education, and the duty of subsequent Legislatures to cherish. To this must be added the fact that our laws make most liberal provisions for the maintenance of public schools in counties, towns, and cities, and levy taxes upon polls and property to sustain same.

How can it be contended that it is the policy of the State to encourage education, and to levy direct taxes upon its citizens for the purpose of

furnishing education free, and at the same time refuse exemption to the property of educational institutions which conduce to cheapen education, and place the higher branches thereof within reach of those who would otherwise be a direct tax upon the people of the State if they were to leave such institutions as this of the defendant, and resort to the public schools?

Now we do not have to resort to any latitude of construction to reach a conclusion that will sustain the decree of the Chancellor in the case at bar. Any thing like a reasonably fair construction of this Act in question will exempt this property from taxation. There is upon the ground a building actually used for the purpose of teaching the primary department, and the bill does not seek to separate the portion of the lot so occupied from the part used for the stables and for hay, corn, and vegetables, to say nothing about the fact that the students get credit on board and tuition for the work they do upon the ground in working on said crops. Nor is there any thing to repel the idea that the land is actually used for the purpose for which said institution was created in the fact that it is separated from the two main buildings by streets. It was purchased at the same time, and the lots have been improved as far as the means of the institution would permit in the erection of buildings for the purposes for which said institution was created. To give the language of the Constitution the strict - construction

contended for by the complainants would lead to excluding every portion of the grounds and every portion of the property not *actually used* in education. It would include only *school buildings, desks, books,* etc., and would exclude ornamental promenade grounds, play grounds, and gymnasium buildings, and infirmary or hospital buildings for the pupils.

The agreed case fails to show that any of this property is used for profit or for purposes not embraced within the duties of the defendant as an institution of learning. There are many adjudged cases from different States, and much in the text-books, which are not easily to be reconciled, growing out of exemptions somewhat similar to those under consideration here.

It is not our aim at this time to discuss these cases, nor to define nor limit what uses may or may not be within the exemptions referred to. We only decide that the intention of the Legislature must govern in ascertaining the extent of such exemptions, and that in arriving at such intention the same strictness of construction will not be indulged where the exemption is to religious, scientific, literary, and educational institutions that will be applied in considering exemptions to corporations created and operating for private gain or profit. In the latter character of cases entirely different considerations move the Legislature, and the exemptions are intended to go no further than they have in terms provided. Nor can it be said that a liberal construction should be given to ex-

emptions heretofore granted railroads, etc., because the Constitution says: "A well regulated system of internal improvement, etc., ought to be encouraged by the General Assembly." It is manifest that this provision has reference to the multiform means in which such improvements could be encouraged without relieving them from taxation. The language is retained in the Constitution under which the Legislature has no power to exempt improvements from taxation, and this Court has uniformly held exemptions from taxation to a strict construction in all such cases. Nor do we mean now to extend exemptions for educational purposes, by any free or latitudinous construction, to any matters not fairly and reasonably within the intention of the Legislature, that intention to be arrived at from the language used and from the policy of the State with reference to such institutions, and the purpose and scope of the particular act under consideration. This idea is clearly put in the opinion pronounced at this term in the case of *University* v. *The State.* It is true that the identical question there decided turned upon the matter of *title* instead of *use;* but the whole subject is incidentally discussed in the opinion, and is instructive as to the policy of this State.

So much has been written in the text-books and reports expressive of the divergent views on this subject that it would be unprofitable to review the cases; so that we content ourselves with, merely a reference to a few of them.

*Northwestern University* v. *People*, 88 Ill., 333, where the State Court took the view advanced by counsel here for complainants. The cause was carried to the Supreme Court of the United States, where that learned tribunal reversed the decision of the State Court upon lines which we have pursued in the disposition of the case at bar.

And the Supreme Court of Illinois, in a later case under the Constitution of 1870, reported in 106 Ill. and 46 Am. Rep., 702, under the title *Marti-cello Seminary* v. *People*, held, under an exemption of of such property "as, may be used exclusively for schools," that lands owned and used by the college for the purpose of raising supplies for the college by ordinary farming were entitled to the benefit of such exemption.

In *Griswald College* v. *State*, 46 Iowa, 275 (S. C., 26 Am. Rep., 138), the Court held that certain houses belonging to the college and used for boarding pupils, and for the residence of professors, etc., were exempt under the language, "devoted solely to the appropriate objects of the college."

To the same effect is *Tax Commissioner* v. *People*, 6 Hun. (N. Y.), 109. See also *Wesleyan Academy* v. *Wilbraham*, 99 Mass., 599; *State* v. *Ross*, 24 N. J. Law, 497; *People* v. *Commissioners of Texas*, 10 Hun., 246.

We give these cases as illustrations of the idea upon which our disposition of this case depends, and without, by any means, intending to approve the extent to which some of them have gone; for,

as is said by Judge Cooley, "the question is, in *each instance*, whether such property, in the manner in which it has been invested (used), can be regarded as within the *intent* of the exemption."

Upon the whole case, as presented in this record, we are of the opinion that the decree of the Chancellor dismissing the bill should be affirmed, which is accordingly done.

Judge Snodgrass does not concur in the above.