University v. Cheney.

VANDERBILT UNIVERSITY *v.* CHENEY.

(*Nashville,* December Term, 1905.)

1.  **TAXATION.**  Mere renting of property not a taxable privilege.
The capability for enjoyment and adaptability to some use are
essential characteristics of property, without which it cannot
be conceived, and the legislature is without power to forbid
the use and enjoyment of property or deprive the owner of any
of its essential attributes, for this would be tantamount to the
power to destroy property.  (*Post, p.* 267.)

Cases cited and approved: In Re Jacobs, 98 N. Y., 105; In re
Marshall, 102 Fed. Rep., 325.

2.  **SAME.**  Renting its property by an educational institution,
the income being used solely for its own benefit, is not a use of
such property "in secular business."
Where an educational institution rented certain property owned
by it to various parties for residential and business purposes,
and devoted the income therefrom solely to the purposes and
needs for which it was created it was held that this did not
amount to a use of such property "in secular business," within
the meaning of the statute providing that property belonging to
educational institutions and used "in secular business" and com-
peting with a like business that pays taxes to the State" shall
be taxed.

Constitution cited and construed: Art. 2, sec. 28.

Statute cited and construed: 1899, ch. 435, sec. 2, subsec. 2.

Cases cited and approved: University of the South v. Skidmore,
87 Tenn., 158; State v. Fisk University, 87 Tenn., 234; Church
v. Hinton, 92 Tenn., 188; Smith v. Anderson, 8 L. R. (15 Ch.
Div.), 2C0.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

JOHN J. VERTREES and STOKES & STOKES, for University.

HILL MCALISTER, for Cheney, City Comptroller.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This record involves a question of taxation and is presented to the court on a stipulation of agreed facts. The original bill herein was filed by the Vanderbilt University to enjoin the city authorities against the collection of taxes assessed against two pieces of property known as the "Vauxhall Flats" and the "Vanderbilt Law Building," owned by said educational corporation. On the hearing, the chancellor dismissed the bill and the university had appealed, assigning errors.

The material facts presented in the stipulation are:

(1) That the complainant, Vanderbilt University, is an educational institution, and the profits derived from

both pieces of property sought to be assessed are applied solely to the purposes and needs of said university.

(2)  The Vauxhall Flats is a building rented out by the Vanderbilt University to various tenants as living apartments, and that such tenants are of the same class and character of the tenants of other flat buildings and hotel buildings which are located in Nashville, and which pay ad valorem taxes to State, county and city. No por tion of the university work is transacted in said building.

(3)  The Vanderbilt Law Building is partially used for lecture rooms, library rooms, and as offices for the secretary of the faculty of the law school; but that the balance of said building constituting by far the major portion thereof, is rented out for offices and stores to various tenants, who transact therein their respective occupations, trades, and callings, and which said tenants are of the same class and kind as those who occupy various buildings owned by individuals and corporations in the city of Nashville. Only a portion of the value of the Vanderbilt Law Building is assessed for taxes, or so much thereof as is used for noneducational work.

(4)  No question is made as to the regularity of either of said assessments, or that the amount levied is excessive.

The contention made on behalf of the university is: That upon the facts stipulated, the property assessed is used exclusively for educational purposes, and is therefore exempt from taxation, both by the constitution and

the statutory laws of the State. Art. 2, sec. 28, of the constitution of 1870, provides as follows: "All property, real, personal and mixed, shall be taxed, but the legislature may except such as may be held by the State, by the counties, cities, and towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational." Prior to the year 1899, the legislature in the exercise of the power granted to it by the constitution, exempted the following property from taxation, viz: "All property belonging to any religious, charitable, scientific, or educational institution, when used exclusively for the purposes for which said institution was created, or is unimproved and yields no income."

In *State* v. *Fisk University*, 87 Tenn., 234, 10 S. W., 284, it was laid down as a canon of construction that "statutes exempting property from taxation when held and used for purposes purely religious, charitable, scientific, literary, or educational, are less strictly construed than like statutes exempting property held and used for private gain, or individual profit." In that case it appeared that a portion of a lot belonging to Fisk University was cultivated; a crop of corn and vegetables being raised thereon. Stables and barns were also located on one corner of this lot; also one small frame building used for schoolrooms for students in the primary department; also another frame building for the intermediate department, built in 1887. Pupils in the college attend-

ed to the raising of corn, hay, and vegetables on this lot. Those so engaged received pay for their work in board and tuition. The corn and hay raised was fed to the cows and horses belonging to and connected with the college. The vegetables were used in the college mess-room, in Jubilee Hall, used for college purposes merely.

It was held that this entire property was exempt from taxation under Acts 1893, p. 212, c. 105.

In *University of the South* v. *Skidmore,* 87 Tenn., 158, 9 S. W., 892, it was held that a charter exemption of realty under the constitution of 1834 "from taxation so long as said land belongs to" an incorporated institution of learning, remains in force so long as title remains in the corporation. It does not depend upon the use made of the property. It was therefore held that the university did not so far renounce title as to defeat the exemption by giving leases thereof for terms of years, with renewal options to divers persons who built up a village thereon, the annual rent being reserved and devoted exclusively to the purposes of the university.

In *M. E. Church South* v. *Hinton,* 92 Tenn., 188, 21 S. W., 321, the provisions of our constitution and statutory law exempting the property of religious and charitable institutions from taxation was considered. The exact question presented in that case was whether the personal property of the Methodist Publishing House, used in conducting its business, was exempt from ad valorem taxation. It appears that the corporation was placed by a charter under control of an unincorporated

religious society or denomination, whose discipline provided that the entire net·income arising from the business of the publishing house, consisting mainly of the publication and distribution of religious literature, should be applied exclusively to the benefit of the traveling supernumerary, superannuated, and worn-out preachers of such religious denomination, their wives, widows, and children. The court held that the publishing house was an institution created for both religious and charitable purposes; and that the ultimate use of its property has been in accordance with these purposes; that the income derived from the use of its property has been exclusively applied to religious and charitable purposes, and hence it is entitled to exemption under the provisions of the constitution and the act of 1889.

These decisions, it will be observed, adjudge that in order to enjoy the exemption from taxation, it is not necessary that the property be physically used for religious, charitable, or educational purposes, that is to say, actually occupied, but that if the income and profits derived from such property are applied exclusively to the purposes aforesaid, the property is entitled to immunity from taxation.

It is insisted, however, on behalf of the city, that since these adjudications were made, our tax laws have been changed for the express purpose of meeting the decisions referred to, and that now if any part of the property of an educational, religious, or charitable institution is used in secular business, and in competition with busi-

ness of like character, the property is taxable. This argument is founded upon Acts 1899, p. 1084, c. 435, sec. 2, subsec. 2, as follows: "All property belonging to any religious, charitable, scientific, or educational institution, when used exclusively for the purpose for which said institution was created, or is unimproved, and yields no income. All property belonging to such institutions used in secular business competing with a like business that pays taxes to the State, shall be taxed on its whole or partial value, in proportion as the same may be used in competition with secular business." It will be observed that the change in the legislation on this subject is found in the second sentence of the above act.

In *M. E. Church South* v. *Hinton,* supra, it appeared that a part of the volume of business done by the publishing house was derived from what was called secular work, that is, the printing of secular books, hand bills, letter-heads, etc. It was insisted by plaintiff that the doing of this secular work was a mere incident; that if the property was thus made liable to taxation, then there would have been an apportionment of values so as to allow exemption to so much of the value as the charitable portion represented, and at most the tax would have been only to the extent of the volume of the secular work compared to the entire volume of business done. This court speaking through Mr. Justice Wilkes, said: "We cannot take this view. It seems that the entire property was used in doing this secular work, and if it thereby becomes liable to any extent, the whole of it is liable. It

is not a case where the property is separable, as where
several buildings belong to the same institution, one of
which is used for secular purposes and the other for
purely religious or charitable purposes, and it can then
be ascertained what part of the property has been used
for secular purposes."

It is said that under the law as it then stood, the
whole property should have been assessed, or none of it
should have been assessed; but that the act of 1899 under
discussion supplies this defect in the power of the tax
assessor, and expressly authorizes an assessment of so
much of the property that is used in secular work. It
is then said that the legislature by the act of 1899 has
supplied the defect thus pointed out in the law as it ex-
isted in 1892. It is argued that the evil intended to be
remedied by the legislature was to prevent a discrimi-
nation against persons engaged in lawful business by
reason of the employment in the business of their compe-
titors of the untaxed property of these corporations, and
for this purpose it was enacted that property belonging
to religious, education, or charitable institutions,
should be taxed when it comes in competition with other
like property which is taxed. The stipulation of agreed
facts shows that there are many office buildings and
hotels in the city of Nashville which are engaged in rent-
ing out their rooms and apartments to the same class
of tenants and occupants who lease the rooms and apart-
ments in the building belonging to Vanderbilt Univer-
sity. It is further shown that all of these hotels and

office buildings pay ad valorem taxes to the State, and the hotels pay in addition a privilege tax.

Hence the insistence is that the act of 1899 was passed to prevent a discrimination in favor of religious, charitable, scientific, and educational institutions and against those who are similarly situated as owners of property. It is very obvious from a reading of the statute that it was intended to prevent some kind of discrimination, but the cardinal inquiry is whether it was intended to impose a tax upon the mere renting out of its property by such institutions for the purpose of making an income. It is conceded that no privilege or other tax is imposed upon private owners for merely renting out their property, nor could such an act be declared a taxable privilege. The legislature could not forbid the use and enjoyment of property, for this would be tantamount to the power to destroy property. As said in *In re Jacobs,* 98 N. Y., 105, 50 Am. Rep., 636, it was said of property: "Its capability for enjoyment and adaptability to some use are essential characteristics without which property cannot be conceived, and hence any law which destroys it, or its value, or takes away any of its essential attributes, deprives the owner of his property. See, also, *In re Marshall,* (C. C.), 102 Fed., 325. We cannot, therefore, presume that the legislature in deciding that all property of such institutions used in secular business shall be taxed, intended to include within the term "secular business" the mere renting out of property. What, then, is meant by the term "secular busi-

ness," as employed in the act of 1899? In the case of *Smith* v. *Anderson*, 8 L. R., 15 Chan. Div., 260, cited by counsel, we find a very perspicuous definition of the term "business" by Sir George Jessel, which we quote as follows:

"There are many things which in common colloquial language would not be called a business even when carried on by a single person, which would be so called when carried on by a number of persons. This is a distinction not to be forgotten, even if we were trying the question by the ordinary use of the English language. For instance, a man who is the owner of offices—that is, of a house divided into several floors and used for commercial purposes—would not be said to carry on a business because he let the offices as such; but suppose a company was formed for the purpose or object of building or leasing a house to be divided into offices, and to be let out, should not we say if that was the object of the company, that the company was carrying on business for the purpose of letting offices, or was an office-letting company, tried by the use of ordinary colloquial language?

The same observation may be made as regards a single individual buying or selling land, with this addition: That he may make it a business, and then it is a question of continuity. A man occasionally buys and sells land, as many landowners do, and nobody would say he was a landjobber, or dealer in lands; but if a man made a particular business of buying and selling land to obtain profit, he would be designated as a landjobber,

University v. Cheney.

or dealer in land. When you go to an association or company formed for a purpose, you say at once that it is a business, because there you have that from which you would infer continuity; it is formed to do that and nothing else, and therefore at once you say that the company carried on a business; so, in the ordinary case of investments, the man who has money to invest, invests his money, and he may occasionally sell the investments, and but others, but he is not carrying on a business, but when you have an association formed, or where an individual makes it his continuous occupation — the business of his life—to buy and sell securities he is called a stockjobber, or sharejobber, and nobody doubts for a moment that he is carrying on business. So, if a company is formed for doing the very same thing, that is, for investing money belonging to persons in the purchase of stocks and shares, and change them from time to time, either with limited or unlimited powers — I should say there can be no question that they are crrying on a business, whether you call it a business of investments, or a business of dealing in securities, or, as the case before me, both, the business of investment and the business of dealing in securities."

Accepting the definition of business in the case cited as correct, it is clear that the mere act of renting out his property by the owner is not carrying on a business; but in order to constitute it a business, the owner must embark in the office letting business for the general public for profit.

Reverting to the act of 1899, it is obvious that two things must concur before the property of an educational institution can be taxed: (1) It must be used in secular business; and (2) it must come in competition with a like business that pays. taxes to the State.

It has already been seen that no owner of property is taxed, or can be taxed, on the mere act of renting out his own property, and hence when an educational institution rents out its own property, it does not come in competition with a like business that pays taxes. The term "secular business" employed in the statute refers to the exercise of some secular business where the property is employed for the purpose of profit.

The object of the legislature was to impose taxes upon capital or property invested in any business that comes in competition with a like business that pays taxes on the capital or property embarked in that business. But, certainly, renting out corporate property owned by the institution is not the pursuit of a business, and the property is not taxable because its income is devoted to educational purposes. *M. E. Church* v. *Hinton,* 92 Tenn., 188, 21 S. W., 321.

The decree of the chancellor is therefore reversed, and a decree will be entered perpetually enjoining the collection of the tax.