WARD SEMINARY FOR YOUNG LADIES *v.* MAYOR AND CITY
COUNCIL OF NASHVILLE *et al.**

(*Nashville.* December Term, 1913.)

TAXATION. Exemptions. "Educational institution". Property
used for educational purposes.

Const. art 2, sec, 28, provides that all property shall be taxed,
but the Legislature may except such as may be held and used
for purely religious, charitable, scientific, literary, and educa-
tional purposes, etc. Acts 1907, c, 602, sec. 2, subsec. 2, exempts
all property belonging to any educational institution when used
exclusively for educational purposes, or is unimproved or yields
no income, but that all property belonging to such institution
used in secular business shall be taxed on its whole or partial
value in production as the same may be used in competition
with secular business. *Held* that the words "educational in-
stitution" should be construed to mean school, seminary, college,
or educational establishment, not necessarily a chartered insti-
tution, so as to limit the exemption to educational corpora-
tions, and that under such act all property, whether owned
by a corporation or a private individual, used exclusively for
educational purposes, without reference to whether a profit
was made therefrom or not, was exempt from taxation, but
vacant real property, used for no purpose connected with the
institution and property belonging to the institution, on which
stores were erected and rented for business purposes, was
subject to taxation.

(Williams J., dissenting.)

Acts cited and construed: Acts 1881, ch. 58; Acts 1883, ch.
105; Acts 1907, ch. 602;

Code cited and construed: Secs. 2199-2200 (S.).

*On the question of the effect of using the property of a relig-
ious, charitable, or educational institution in secular business or for
revenue, upon its right to exemption from taxation, see note in
19 L. R. A., 289.

Ward Seminary v. City Council.

Constitution cited and construed: Art. 2, sec. 28; Art. 11, secs. 8, 12.

Cases cited and approved: Mayor, etc., of Nashville v. Ward, 84 Tenn., 27; State v. Railroad, 124 Tenn., 16; State v. Fisk University, 87 Tenn., 241; University of the South v. Skidmore, 87 Tenn., 156; Methodist Episcopal Church, South, v. Hinton, 92 Tenn., 188; Vanderbilt University v. Cheney, 116 Tenn., 259; Governor v. Allen, 27 Tenn., 176; Polk v. Plummer, 21 Tenn., 500; Gerke v. Purcell, 25 Ohio St., 229; Nobles County v. Hamline University, 46 Minn., 316; Engstad v. County, 10 N. D. 54; Morris v. Lone Star Chapter, 68 Tex., 698; Academy v. Bohler, 80 Ga., 162; Kentucky, etc., School v. Louisville, 100 Ky., 486; Leagon Transportation Co. v. Detroit, 139 Mich., 1; Mobile v. Stonewall Ins. Co., 53 Ala., 581; Adams v. Yazoo, etc., R. Co., 77 Miss., 194; Wey v. Salt Lake City, 35 Utah, 504; State v. Johnston, 214 Mo., 656; New Haven v. Sheffield Scientific School, 59 Conn., 163; Webster City v. Wright County, 144 Iowa, 502; N. W. University v. People, 80 Ill., 333; Phillips Academy v. Andover, 175 Mass., 118; Detroit Home v. Detroit, 76 Mich., 521; Railroad Co. v. Harris, 99 Tenn., 684; Berryman v. Board of Trustees, 222 U. S., 334.

Cases cited and distinguished: State v. Fisk University, 87 Tenn., 233; Jackson v. Preston, 21 L. R. A. (N. S.), 165; Cemetery Co. v. Creath, 127 Tenn., 6861; Parsons Business College v. Kalamazoo, 166 Mich., 305; Dodge v. Williams, 46 Wis., 100.

---

FROM DAVIDSON

---

Appeal from Chancery Court, Davidson County.— JOHN ALLISON, Chancellor.

EWING & GARARD, and H. L. SCOTT, for appellants.

JAS. C. BRADFORD and R. T. SMITH, for appellee.

Mr. Justice Green delivered the opinion of the Court.

The complainant is a private corporation organized under the laws of Tennessee for the purpose of teaching any useful profession, trade, business, or art, and of giving instruction in any branch of learning, practical or theoretical. It was chartered under the provisions of chapter 58, sec. 3, of the Acts of 1881, Shannon's Code, secs. 2199-2200. It is a corporation organized for profit, and not an eleemosynary corporation, or corporation organized for general welfare.

Ward Seminary has for many years been conducted as a boarding school for girls, and has become quite a famous institution.

An attempt was made by the city of Nashville to tax its property within the limits of that city, and this bill was filed to enjoin the city from so doing. The complainant claimed to be exempt as an educational institution under a statute that will be hereafter noted. The chancellor rendered a decree in favor of the complainant, and the city of Nashville has appealed to this court.

The complainant owned, in addition to its school equipment, several pieces of real estate. Upon some of these were buildings used for dormitories and recitation rooms; some of the land was used for exercise and playgrounds; some was vacant and used for no purpose connected with the school, and upon some were stores rented out for business purposes.

The provisions of our constitution and of our statute regarding exemption of educational institutions from taxation are as follows: Article 2, section 28, of the constitution of the State contains this language:

"All property, real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars' worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer, and his immediate vendee."

The act of 1907, ch. 602, sec. 2, subsec. 2, contains this exemption from taxation:

"All property belonging to any religious, charitable, scientific, or educational institutions when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income. All property belonging to such institution used in secular business and competing with a like business that pays taxes to the State shall be taxed on its whole or partial value in proportion as the same may be used in competition with secular business."

The various revenue acts passed since the adoption of the constitution of 1870 are quite similar in the provisions they contain respecting the exemption of property used for religious, charitable, scientific, literary, and educational purposes.

We have only one reported case dealing with an effort to assess the property of educational institutions when that property was actually used for school purposes. This is the case of *Mayor, etc., of Nashville* v. *Ward,* 16 Lea, 27. In this case the court construed the acts of 1882 and 1883. The court held that the act of 1882 exempted from taxation property which belonged to private individuals, if used for educational purposes. It held, however, that the act of 1883 exempted such property only in case it belonged to incorporated institutions of learning, and did not exempt the same if it belonged to private individuals, although used for educational purposes.

The latter holding was based on the use of the word "institution" in the act of 1883; the exemption in that act being to property belonging to religious, charitable, scientific, literary, or educational institutions. The court said that the word "institution" meant a chartered institution, or a corporation, and that the exemption, therefore, did not include the property of individuals which might be used for educational purposes.

This construction cannot be adhered to. Such a construction exempts from taxation property belonging to corporations for profit, if used for educational purposes, but holds the property of individuals used for identical purposes liable for such taxes. If subsection 2 of section 2, Ch. 602, Acts of 1907, be so construed, it would be clearly unconstitutional. The court has recently considered the question of discrimination

between individuals and private corporations in the case of *State* v. *Railroad,* 124 Tenn., 16, 135 S. W., 773, Ann. Cas., 1912D, 805, where the authorities are reviewed at length. As pointed out in *State* v. *Railroad,* there must be some natural and reasonable basis for discrimination in legislation between individuals and corporations. Such classification must have some natural and reasonable basis. No reason whatever has been suggested for a discrimination between an individual and a corporation for profit, both engaged in educational work, and any attempt of the legislature to make such a distinction as between the two in the matter of exemption from taxation would be invalid. This court, therefore, cannot suppose that the legislature had any such intention, unless the language used coerces this conclusion.

This question of arbitrary classification was not called to the attention of the court in *Mayor, etc., of Nashville* v. *Ward,* supra.

We are of opinion, therefore, that the above-quoted provisions of the act of 1907 exempt from taxation all the property of educational institutions, whether the property or the institution be owned by corporations or individuals if the property is exclusively used for educational purposes.

Such is the construction given like acts in most of the States. In a note to *Jackson* v. *Preston,* as reported in 21 L. R. A. (N. S.,) 165, the annotator says:

"In the majority of cases, legislative intent has been construed as including private schools within such terms as 'school,' 'educational institution,' 'seminary,' 'college,' or other similar term, whether such schools are conducted for profit to the owners, or because of charitable or religious considerations, and whether they are incorporated or not incorporated.'

A number of cases are collected in this note which fully sustain the quotation made.

It is not worth while to undertake a review of the cases from other jurisdictions, since at last the decision of this court must rest upon our own constitution, statutes, and public policy.

Our constitution of 1870, art. 11, sec. 12, says:

"Knowledge, learning and virtue, being essential to the preservation of republican institutions, and the diffusion of the opportunities and advantages of education throughout the different portions of the State being highly conducive to the promotion of this end, it shall be the duty of the general assembly in all future periods of this government, to cherish literature and science."

This court said in *State* v. *Fisk University*, 87 Tenn., 233, 10 S. W., 284, speaking of the foregoing section:

"And while it is true that this language is found in the section which treats of the common school fund, it is not confined to it, but is declaratory of the sense of the constitutional convention on the subject of education, and the duty of subsequent legislatures to cherish."

We think, therefore, in view of this constitutional admonition and the necessity of schools, that it was the intention of the legislature to exempt property used in educational work, whether such property was owned and such work conducted by individuals or corporations. We know of no one who has accumulated riches in educational endeavor. No abuse is likely to arise if the exemption be confined to property actually used in school work. School teachers have to live, and their property should not be denied exemption when employed in educational work merely because the owners of the property derive some profit from it. In the great majority of cases, this profit is meager, and not at all commensurate with the work done for the youth of our State and the consequent benefit to the whole body politic.

The natural construction of our constitution and revenue statutes is to exempt from taxation all property physically used for religious, charitable, and educational purposes, or actually occupied for such purposes. We think the words "educational institution" as used in the act of 1907 mean school, seminary, college, or educational establishment, not necessarily a chartered institution. If the word "institution" be interpreted as in *Mayor, etc., of Nashville* v. *Ward*, supra, this section of the act, as we have seen, would be unconstitutional, and it is our duty to give the act a construction that will save it. The exemption is to the owner of the institution, whether corporate or individual.

In regard to vacant property owned by the complainant and the property which complainant rents out, we are of opinion that such property is not exempt from taxation.

In *State* v. *Fisk University,* 87 Tenn., 241, 10 S. W., 284; *University of the South* v. *Skidmore,* 87 Tenn., 156, 9 S. W., 892, *Methodist Episcopal Church, South,* v. *Hinton,* 92 Tenn., 188, 21 S. W., 321, and *Vanderbilt University* v. *Cheney,* 116 Tenn., 259, 94 S. W., 90, it was held that certain income-bearing property and vacant property not actually used for religious, charitable, or educational purposes was exempt from taxation. These cases proceeded on the theory that, inasmuch as the profit derived from such property was applied exclusively to educational, charitable, and religious purposes, the property was entitled to immunity from taxation. In all these cases, however, the property belonged to eleemosynary corporations, or corporations for the general welfare.

A distinction was taken in the cases referred to between such property so held by such corporations and such property so held by individuals or corporations for profit. It was concluded that while certain property belonging to Vanderbilt University, the Methodist Church, Fisk University, and the University of the South was not physically employed in educational, religious, and charitable work; nevertheless, inasmuch as all the income arising from the property was so applied, and the ultimate use of the property was for such purposes, an exemption arose under our Consti-

tution and statutes. Such a question is not presented in this case.

The complainant here is a corporation for profit. Its net earnings or ultimate gains go to its stockholders, not to educational, charitable, or religious ends. Therefore the only portion of its property which is entitled to immunity from taxation is that portion physically used and actually occupied in educational work.

The doctrine of *Methodist Episcopal Church, South,* v. *Hinton,* and of other cases above cited, was announced by divided courts, and has been subjected to criticism. It certainly will not be extended. It must be confined to the property of corporations organized for the general welfare.

That portion of the act of 1907, undertaking to exempt the property of educational institutions which "is unimproved and yields no income," must be held unconstitutional in so far as it applies to the property of such institutions operated by private corporations or individuals. There is no warrant in the constitution for such an exemption. The constitution authorizes the legislature to exempt property "used for purposes purely religious, charitable, scientific, literary or educational." Vacant property and property held merely as an investment by an institution, such as complainant, a corporation for profit, cannot be exempt. Neither the direct use of such property nor the ultimate use is for purely educational purposes.

It is suggested that the word "institution" in the act of 1907 should be construed to mean corporations organized for general welfare alone. It is urged that, so construed, the act would be constitutional; it being insisted that a discrimination and distinction between an eleemosynary corporation on the one hand and a private corporation or individual on the other rests on a sound basis.

This contention is plausible, but such an interpretation of the act would subject to taxation all school property in the State owned by corporations for profit. Such property has been considered exempt for thirty years, since the decision of this court in *Mayor, etc., of Nashville* v. *Ward*, supra. On the faith of this case, thousands upon thousands of dollars have been invested in school property in Tennessee, held and operated by private corporations. Scarcely a state in the South compares with Tennessee in the number, efficiency, and value of educational institutions so owned. Such institutions have thus been fostered and built up, and it has been the policy of our State to encourage them. It would be disastrous for the court at this time to reverse the attitude of the State and to adopt a construction of our revenue statute that would subject such institutions to taxation on the property physically used and actually employed in educational work.

Although recognizing the force of the contention made by learned counsel for the city, we are unwilling to adopt such a construction of the Revenue Act as he urges. If a different policy along these lines is to

be inaugurated in Tennessee, the legislature should adopt it and not the courts.

The result of the whole case is that we hold the property of the complainant which is in reality used in educational work, such as the school buildings, dormitories, exercise grounds and the usual and appropriate equipment of this character of institution, to be exempt from taxation.  All of its property which is vacant, and all of its property which is rented out, is liable for taxation.

Thus modified, the decree of the chancellor will be affirmed, and the costs will be divided between the city and the complainant in the proportion that the property held exempt bears to the property held subject to taxation.

MR. JUSTICE WILLIAMS delivered a dissenting opinion.

In this cause a bill in equity was filed by complainant corporation to enjoin the collection by the city of Nashville of municipal taxes levied for the year 1910 upon certain of its property in that city, on the ground that the property was, under the constitution of the State and the applicable statute, exempt from taxation. A cross-bill was filed by the city to enforce the lien claimed to have been fixed by the levy.

The facts were agreed upon in the form of a stipulation, and such as are pertinent to the present determination are as follows:

(1) Ward's Seminary is a Tennessee corporation, organized by virtue of and under the provisions of

chapter 58, section 3, of the Acts of 1881, carried into Shannon's Code, at sections 2199 and 2200. It was chartered on April 27, 1888, for the purpose of teaching "any useful profession, trade, business or art, and of giving instruction in any branch of learning, practical or theoretical." It conducts a school or seminary for girls and young women and has been engaged in this business ever since its incorporation, including the year 1910.

(2) When first organized, the Seminary's capital stock was $20,000, but on the 15th day of August, 1906, it was increased to $40,000. All of its stock has not yet been issued, but such as has been issued is held by the following parties in the following amounts: J. D. Blanton, 239 shares; Eustice A. Hall, 122 shares; W. E. Ward, 1 share; R. T. Smith, 1 share, M. G. Buckner, 1 share; and J. Harry Howe, 1 share.

(3) Complainant has never earned in the conduct of its business enough money to more than conduct and carry on its school, and has never paid or undertaken to pay any dividends or profits to its stockholders. It has, however, the legal right to declare dividends whenever the profits justify such action on the part of its board of directors.

(4) The total market value of complainant's property is $240,520; total amount of indebtedness, $105,-000; net value of property, real and personal, $135,520; authorized capital stock, $40,000; stock issued, $36,500.

(5) All of property set forth in the stipulation, except such as was vacant and unimproved, was physic-

ally used during the year 1910 exclusively in connection with the operations of the Seminary, and it was used for no other purpose; and all of said property, except that noted above, was, during the year 1910, and is now, exclusively used for the purpose of its business.  No actual use for educational purposes is made of the excepted property.

(6)  Ward's Seminary is not supported by public taxes; tuition fees are charged, all of which are devoted to maintaining said school anl paying its necessary expenses; it maintains no free scholarships; its patrons are drawn from nearly every State in the Union and some from foreign countries.

The errors assigned by the city, as appellant, may be reduced to four in number:

(1)  The court erred in holding that the complainant was an educational institution under the meaning of the Revenue Acts of the State and under the State constitution.

(2)  The court erred in holding that section 2, subsection 2, of the Revenue Act of 1907, chapter 602, was constitutional, in the following particulars, to wit:  In that it exempted all property belonging to any educational institution when used exclusively for the purpose for which said institution was created or is unimproved and yields no income, for the reason that this statute in this particular discriminates oppressively, unreasonably, and unfairly against private individuals, and only seeks to exempt the property of corporations, although used for the same purpose.

(3) The court erred in sustaining so much of section 2, subsection 2, Revenue Act of 1907, chapter 602, as exempted unimproved property that yields no income. This part of said act is, it is insisted, unconstitutional and void, in that it goes beyond the exemption allowed by the State constitution, art. 2, sec. 28.

(4) The court erred in sustaining complainant's bill and dismissing the cross-bill of the city, and in refusing to decree in its behalf for the collection of the taxes assessed against complainant. The constitution of this State (1870) in article 2, sec. 28, provides:

"All property real, personal or mixed, shall be taxed, but the legislature may except . . . such as may be held . . . and used for purposes purely religious, charitable, scientific, literary or educational. . . . All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value."

Article 11, sec. 8, of the same constitution provides:

"The legislature shall have no power . . . to pass any law . . . granting to any individual or individuals, rights, privileges, immunitie [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law."

The act of the legislature under which complainant Seminary claims exemption from taxation is the Revenue Act of 1907, ch. 602, sec. 2, subsec. 2, as follows:

"Section 1. That all property—real, personal and mixed shall be assessed for taxation for State, county, and municipal purposes, except such as is declared exempt in the next section.

"Sec. 2. That the property herein enumerated and none other shall be exempt from taxation. . . .

"Subsec. 2. All property, etc., belonging to any religious, charitable, scientific, or educational institutions when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income. All property belonging to such institution used in secular business and competing with a like business that pays taxes to the State shall be taxed on its whole or partial value in proportion as the same may be used in competition with secular business."

It is conceded by counsel of the Seminary and of the city that the provision of the constitution (article 2, sec. 28) is not a self-executing provision exempting property from taxation, and is permissive and not mandatory on the legislature.

When the constitutional convention met in 1870, they found that, as the result of the waste of the war between the States and of the depression incident to the period of reconstruction following the war, the educational interests of the State were in a deplorable condition. The public school fund had been dissipated; there was scarcely a college the doors of which had

not been closed, some never to be opened again; and the public school system had been swept away, and the sources of support had, practically speaking, dried up. A feeble and abortive effort had been made by the legislature in 1867 to re-establish the State's system of public schools, but this act had been repealed in 1870. The convention, therefore, wisely decided to provide for immunity from taxation in behalf of property "held and used for purposes purely educational," and as wisely left this provision elastic, so that the legislature could make the immunity broad so long as it might deem the true policy of the State to be one of encouraging individuals and private and public bodies to aid the sovereign power in educating its citizenship; and also so that the legislature might narrow the scope of the immunity of exemption as the need of the State's efforts being supplemented grew less.

It is not to be doubted that, under this constitutional provision for tax exemption or property held and used for purposes purely educational, it is within the power of the legislature to grant the immunity to the property of individuals, and of created institutions, corporate or noncorporate in form. *Nashville* v. *Ward*, 16 Lea, 27, 34.

A further point was involved for decision in the case of *Nashville* v. *Ward*, supra, that an individual (W. E. Ward, then the owner of the Seminary now belonging to complainant corporation) was not within the purview of Act 1883, ch. 105, sec. 2, subsec. 2, which provided for exemption from taxation of "all

property belonging to any religious, charitable, scientific, literary or educational *institution,* and actually used for the purpose for which such *institution was created,"* the court holding that such individual was not an "institution . . . created." That was, it is conceived, the sole queston there decided, so far as the questions raised in the present case are concerned.

The complainant Seminary bases, on language used by Chief Justice Deaderick in the opinion in that case, its contention that it was there further held that, in order to the exemption, the claimant need only be an institution in the sense of a corporation, created by the legislature, and that, since complainant is such a corporation, it is entitled to claim immunity in this case under Act 1907, ch. 602, quoted above, in which the phraseology is somewhat similar to that found in Act 1883, ch. 105, and identical as to the words "institution created."

It is true that Chief Justice Deaderick, in *Nashville v. Ward,* said that the word "institution," fairly construed, meant one created by act of incorporation, but it is evident that what was thus said did not bear upon and had no necessary relation to the point the court there had before it for decision, as is noted above.

That able jurist used this language, more by way of illustration than of application, and as if to say: An "institution" cannot be an individual but must have inhering in its foundation the element of permanency, such as bodies created by acts of incorporation.

The unfairness of imputing more to the language so used becomes the more apparent when we consider that, if it was there meant to be held that only educational corporations created by legislative act were so entitled, the same word from Act 1883, ch. 105, "created," would have applied to and qualified "religious institutions" as well as "educational institutions," with result that no church that was not at that date incorporated by legislative act would have been entitled to tax exemption. An infinitesimally small number of churches were then so incorporated. To assign to the court's opinion in *Nashville* v. *Ward* a meaning that would have so resulted is not fair, particularly so since it is unnecessary. Further, to impute to the court a holding in that case that the immunity was granted to corporations aggregate or corporations by legislative creation, and denied to corporations sole, as complainant's insistence would require, would place the court in an attitude of having there enforced an act, which embodied a classification for immunity purposes, that approximated being arbitrary and vicious, if indeed it was not truly such, including corporations aggregate created by legislative enactment, and excluding corporations sole which are not so created, but which are recognized as corporations in our system of jurisprudence. *Governor* v. *Allen*, 8 Humph., 176; *Polk* v. *Plummer*, 2 Humph., 500, 506, 37 Am. Dec., 566; 1 Thomp. Corp., sec. 8.

A familiar example of a corporation sole makes what is here said all the more pertinent—a bishop of a dio-

cese in whom, and whose successors in perpetuity, often titles to educational and religious properties are vested, which holder is as justly due, under any test of reason or equity, the immunity as any corporation created by legislative enactment.

It is repeated that what the court in *Nashville* v. *Ward* meant to thus imply, by way of illustrating example, was that it was requisite, in order to immunity, that the "institution" be one "created" under terms that fixed upon it permanency as to the use of the given property, which element was lacking in an individual.

The word "institution" has often been before courts for construction and definition, but quite as often from various angles of vision and side lights furnished by the particular act under review, in which the word was found, therefore, with discordant results in definition.

Thus some of the courts have held, under particular acts, that the word was used as descriptive of the establishment, place, or physical plant where the business of the association was carried on. *Gerke* v. *Purcell,* 25 Ohio St., 244, 16 Am. & Eng. Ency. Law (2d Ed.), 823.

In other jurisdictions (basically differing) the word is held referable to the organized body, itself, and to *ownership* by it. *Nobles County* v. *Hamline University,* 46 Minn., 316, 48 N. W., 1119; *Engstad* v. *County,* 10 N. D., 54, 84 N. W., 577; *Morris* v. *Lone Star Chapter,* 68 Tex., 698, 5 S. W., 519; *Academy* v. *Bohler,* 80 Ga., 162, 7 S. E., 633; *Kentucky, etc., School* v. *Louisville,*

100 Ky., 486, 36 S. W., 921, 40 L. R. A., 119. With the latter decisions our cases accord. *M. E. Church, South,* v. *Hinton,* 92 Tenn., 188, 196, 201, 203, 206, 21 S. W., 321, emphasized by the dissenting opinion of Snodgrass, J., and cases cited; *Vanderbilt University* v. *Cheney,* 116 Tenn., 259, 94 S. W., 90.

In respect of the limitations upon the word "institution" tending to confine it, it is conceived that, as used in our tax exemption statute, the definition should exclude an organization lacking in permanency of nature, as contradistinguished from an undertaking that is transient and temporary, and should imply foundation by law, whether the mode of its creation be by way of legislative enactment, common law fiction (corporation sole), or a trust, but imposing always an irrevocable use of the property for the purposes the law granting the immunity holds in regard.

The complainant Seminary contends that while this element of permanency is requisite, yet such inheres in it as a body corporate, and that, so inhering, there was warrant for the legislature's granting it the benefit of exemption from taxation while withholding it from individuals; its further insistence being that Act 1907, ch. 602, sec. 2, subsec. 2, is constitutional if and when construed to so grant and withhold immunity; the element of permanency justifying the classification which excludes alike the individual and the creation by way of trust.

The counter contention of the city is that such a classification is arbitrary and vicious, and would under

test recently applied by this court, make the subsection unconstitutional and void. *State* v. *Railroad,* 124 Tenn., 1, 135 S. W., 773, Ann. Cas., 1912D, 805; *Daly* v. *State,* 13 Let, 228; *Teagan Transp. Co.* v. *Detroit,* 139 Mich., 1, 102 N. W., 273, 69 L. R. A., 431, 111 Am. St. Rep., 391; *Mobile* v. *Stonewall Ins. Co.,* 53 Ala., 581; *Adams* v. *Yazoo, etc., R. Co.,* 77 Miss., 194, 24 South., 200, 317, 28 South., 956, 60 L. R. A., 33, 95. The two last-named cases related to a classification for tax exemption excluding individuals and including corporations for profit. It may be remarked in passing that Mr. Gray, in his work on Limitations of the Taxing Power, secs. 1721-1722, 1323, indicates his opinion to be that the rule of the Alabama and Mississippi cases, cited above, was a sound one, and that it would apply in all States where, as in Tennessee, the constitution demands the application of the test of uniformity and equality. Article 11, sec. 8.

This contention of defendant city we all agree to be well taken.

We should, in my opinion, hold that complainant, being a body corporate for profit, whose incorporators had the option of taking out a charter for educational purposes under our general incorporation law (a) for general welfare (Acts 1875, ch. 142), or (b) for private profit (Acts 1881, ch. 58), chose the latter mode; and since it is optional with its stockholders to have declared, through a board of directors, and to receive current dividends, and, further, to terminate by dis-

129 Tenn.—28

solution the corporation's existence, distributing its assets to themselves at will, the Seminary here involved is lacking in such permanency, and its property is not used "exclusively" for educational purposes within the meaning of the exemption act here under review. This phase was commented on as a determining element in the recent tax exemption case of *Cemetery Co.* v. *Creath*, 127 Tenn., 686, 157 S. W., 412, 413, where it was said:

"We have not here involved, it should be specially noted, a corporation for profit, that is, free at will to throw off or terminate the responsibility of the charity, but one on which rests during corporate existence a law-imposed trust," etc.

The argument *contra* in behalf of the Seminary is that the *actual* use of its property and income during the given tax year was for educational purposes only, and that this suffices. In the early statutes the words "used actually" were employed instead of the phrase "used exclusively," which appears in the later acts, and it seems clear that in the change in phraseology there was a purposed meaning.

The fact that the income referred to in the stipulation may have been, for the given year, used for the Seminary's needs and purposes, and not for personal profit, was due to self-imposed and not law-imposed limitation. Besides, the capital stock, represented by $37,500 of outstanding shares, is shown to have increased in value to $240,520, thus affording a basis for the declaration of a stock dividend, as distinguished

from current or installment dividends. It is not made clear by the stipulation whether the increase in capital stock from $20,000 to $40,000, therein referred to, was or was not by way of a declaration of such a stock dividend. Further, if we consider it to be an agreed fact that no sort of dividends have ever been paid, still it cannot be said that personal profit is excluded, because of the further consideration that the shares in the hands of the stockholders, having a value very far above par, are most practically usuable by the stockholders to personal advantage by way of collateral security.

Since the change in the phrasing of the tax exemption acts to the expression "used exclusively," this court has consistently treated of the exemption as an immunity granted to educational institutions created for general welfare, and not for profit.

Thus, in *State* v. *Fisk University,* 87 Tenn., 233, 241, 10 S. W., 284, 286, where a liberal construction was declared proper to be indulged in respect of a corporation for public welfare, it was said:

"The same strictness of construction will not be indulged when the exemption is to religious, scientific, literary, and educational institutions that will be applied in considering exemptions to *corporations created and operating for private gain or profit.*"

In *M. E. Church, South,* v. *Hinton,* supra, the court said:

"There is a material difference between charitable and business corporations. In the former *there are no*

*stockholders, and there is no element of individual gain or profit, but a public trust."*

Logically leading to the conclusion that the immunity from taxation is not by the cited statute granted to complainant Seminary, are these further considerations:

In *State* v. *Fisk University,* supra, *M. E. Church, South,* v. *Hinton,* supra, and *Vanderbilt University* v. *Cheney,* supra, it was held that it was not requisite to the claim of exemption by a corporation for general welfare that the property used be such as is directly and immediately held and devoted to educational purposes, or charitable purposes, and that it is permissible for real estate used to produce rentals, or a publishing plant used for income, to be protected as immune, provided the product or income from the property thus indirectly held be devoted to such purpose. In line with these Tennessee cases are decisions of the courts of other States. *Nobles County* v. *Hamline University,* 46 Minn., 316, 48 N. W., 1119; *Wey* v. *Salt Lake City,* 35 Utah, 504, 101 Pac., 381; *State v. Johnston,* 214 Mo., 656, 113 S. W., 1083, 21 L. R. A. (N. S.), 171; *New Haven* v. *Sheffield Scientific School,* 59 Conn., 163, 22 Atl., 156; *Webster City* v. *Wright County,* 144 Iowa, 502, 123 N. W., 193, 24 L. R. A. (N. S.), 1205; *Kentucky, etc., School* v. *Louisville,* 100 Ky., 470, 36 S. W., 921, 40 L. R. A., 119.

We so recently as 1913 reaffirmed the doctrine in the case of *Cumberland Lodge* v. *Nashville,* 127 Tenn., 248, 154 S. W., 1141.

The principle upon which our cases proceed is that the test applicable is the *ultimate use,* whereas those courts which hold to the contrary doctrine look only to the *direct use,* disallowing the tax exemption to property not held immediately as parts of the physical plant. *N. W. University* v. *People,* 80 Ill., 333, 22 Am. Rep., 187; *Phillips Academy* v. *Andover,* 175 Mass., 118, 55 N. E., 841, 48 L. R. A., 550; *Detroit Home* v. *Detroit;* 76 Mich., 521, 43 N. W., 593, 6 L. R. A., 97.

If educational corporations created for profit be admitted, under the statute, into the class of educational corporations for general welfare and not profit, it could be argued that, by parity of reasoning they would have to be accorded all the incidents of immunity held to inure to the general welfare corporations, inclusive of the right to have protected in their hands property held incidentally and indirectly for income. Such contention, if followed, would result in the grant of exemption from taxation to property not *immediately* held for educational purposes, and the holding of which is not vindicated by the *ultimate* use, which is seen to be one for profit. The abuses that would be incident to such a ruling are of easy contemplation.

If corporations for profit be allowed entrance into the class with corporations for public welfare, it is not improbable that, in this age of promotion, enterprises will be launched in corporate form under the guise of educational corporations, having in view yet more patently private profit, such as business colleges. The Supreme Court of Michigan in the case of *Detroit,*

*etc., School* v. *City of Detroit,* 76 Mich., 521, 43 N. W., 593, 6 L. R. A., 97, held, under the Michigan statute providing exemption from taxation of the property of "scientific institutions incorporated under the laws of this state . . . and occupied by them for the purposes for which they were incorporated," that a seminary incorporated for profit was entitled to the benefit of the exemption. But in the later case of *Parsons Business College* v. *Kalamazoo,* 106 Mich., 305, 131 N. W., 553, 33 L. R. A. (N. S.), 921, it was held that a business college so incorporated was not within the protection of the act; it having become incorporated chiefly to avoid taxation. Such entrance, if permitted, would lead to attempted differentiations, in respect of institutions that lie in the debatable zone, in classification, where the line of cleavage could not be easily or satisfactorily drawn.

If the rule of classification is placed, as indicated, upon the nature of the institution as one for public welfare, we have at once a practical and just test, and one that cannot be said to be arbitrary or lacking in reasonableness.

In reference to an insistence and the holding of the majority that the word "institution" in the Revenue Act may be construed to relate to property held as an institution, whether by a body corporate, noncorporate, or an individual, thus meeting the point of arbitrary classification, I conceive this to be based on two fundamental misconceptions or errors; and, further, it is admitted that the construction so contended

for would, on adoption, work an overruling of the case of *Nashville* v. *Ward*. And herein:

Let us assume that, for test of exemption from taxation, we should thus refer the claimed exemption to *property* held as such; that is, in the sense of a physical plant or establishment where educational work is carried on. This would be, as indicated, directly in the face of the decision of this court in *Nashville* v. *Ward*, where under a statute (1883) identical in its immediately pertinent phraseology with the act we have here under review the court said:

"In the Act of 1883, the terms used in describing the ownership in respect of 'institutions' are 'belonging to', and these terms were intended to and do import ownership."

As we have seen, this is in harmony with the later holdings of this court, the strongest illustration and application being that embodied in the decision of the case of *University of the South* v. *Skidmore*, 87 Tenn., 156, 9 S. W., 892. Such a ruling would be, furthermore, directly out of accord with the act in question which refers the test to ownership of the property, rather than to the property per se.

Again, this court in *Nashville* v. *Ward*, directly ruled that the phrase "corporations created" did not include an individual owner of property. Much authority might be cited in support of the proposition that the word "institution" (standing alone) cannot be construed to cover an individual; and we believe that no case can be cited which holds that an individual owner

can be brought within the meaning of the phrase "institutions *created.*" The Supreme Court of Wisconsin (*Dodge* v. *Williams,* 46 Wis., 100, 50 N. W., 1107) said:

"A private school or college may by courtesy be called an 'institution,' according to the American fashion of promoting people and things by brevit names. But, in legal parlance, an 'institution' implies foundation by law, by enactment or prescription. One may open and keep a private school; he cannot be properly said to institute it."

And, for a stronger reason, an individual cannot in any legal sense be said to be an "institution *created.*" The language of the statute had in anticipation a creation not by one's own act, but by the act of another, binding the ownership under terms importing permanency in foundation.

I have, as above outlined, indicated a liberal construction for the phrase "institutions created" under the doctrine announced and applied by this court in holdings that where an institution for the public welfare is involved, an exemption statute, in respect of same, shall be given a liberal construction; but in the same connection it was declared that this rule of liberal construction will not be applied to institutions created and operating for private gain or profit.

Any attempted further liberality in construction in order to the inclusion of individual owners would be necessary to sustain the exemption clause of the act under consideration against the attack based on the

constitutional inhibition against arbitrary classification; but if this construction were adopted, it would be to place this court absolutely alone, without the support of any precedent from another jurisdiction, in holding that an individual may be conceived of as being covered or included by the expression "corporation *created.*"

It would seem plain that the legislature in its every enactment subsequent to the decision in *Nashville* v. *Ward,* supra, in adopting the phraseology of the act of 1883 therein construed, did so having in mind that judicial construction which excluded individuals who engaged in educational endeavor for profit. The. majority, therefore, do more than overrule that case; they reform the legislation presumably based thereon.

Under the contention here being combated, how would the property of complainant Seminary that is not *actually* used (but incidentally held) for educational purposes be treated? The ownership of such property on its part is shown to exist, by the terms of the stipulation. This is held by the majority to be nonexempt under the statute. It should be here noted that those courts which, under the peculiar legislative acts in their States, hold that the physical plant is the test also hold that the lands purchased and held by such holder for the purpose of removing thereto its buildings after a sale of the property then occupied by it is not exempt from taxation, a direct and immediate holding being requisite. But on what principle under our statutes and decisions could the complainant

Seminary be denied the right to have treated as exempt property incidentally held, if it be once admitted that it, equally with a corporation not for profit, is within the terms of legislative act of exemption?

Unless the majority means to overrule or undermine the cases of *M. E. Church, South,* v. *Hinton,* supra, *Vanderbilt University* v. *Cheney,* supra, and the *Cumberland Lodge Case,* and to adopt the doctrine of those courts which hold to the test of physical plant, rather than to the test of ownership, it is submitted that when the Seminary is granted immunity at all, it must be granted it in full measure; that to grant it in so far and to deny it in so far leaves our cases lacking in symmetry and the law of this State on the subject unique among the jurisdiction of the Union.

The firmly fixed doctrine of this court is that a statutory grant of exemption must be clearly shown by one who claims it. *Railroad Co.* v. *Harris,* 99 Tenn., 684, 43 S. W., 115, 53 L. R. A., 921. In the case of *Berryman* v. *Board of Trustees,* 222 U. S., 334, 350, 32 Sup. Ct., 147, 56 L. Ed., 230, the Supreme Court of the United States applied the rule of strict construction to college incorporated for public welfare; but, as we have seen, this court has been in that particular more liberal; but liberality stops at the point where a claimant is unwilling to subordinate self-gain to the public weal and to conduct the enterprise "exclusively" for that purpose which the State regards as entitled to the recognition of exemption privilege—education. True reciprocity may be said to be involved where

Ward Seminary v. City Council.

property is devoted and used under terms of such subordination or abnegation.   The State, in recognition of the fact that one of the duties incumbent on it as sovereign is thus being in part borne by others, with relief to her in so far, by way of reciprocity extends her immunity from taxation.

My dissent is therefore compelled.   It might be admitted that the policy announced and result reached by the court are desirable of being compassed.   That is a matter for the legislature to consider, not the court.